# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SYLVIA CARTY,**

                          **Plaintiff,**

**-vs-**                                                          **Case No.  8:13-cv-2089-T-17DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

                          **Defendant.**
_____

# Report & Recommendation

**TO THE UNITED STATES DISTRICT COURT**

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED.**

## I.      BACKGROUND

### A.      Procedural History

Plaintiff filed for a period of disability and disability insurance benefits on November 10, 2010.  R. 61-62.  She alleged an onset of disability on June 19, 2009, due to carpal tunnel syndrome

and residual pain in both hands and arms, obesity, headaches, and hypertension.  R. 21, 22, 87, 96, 104.  Plaintiff's date of last insured is December 31, 2014.  R. 61, 70.  Her application was denied initially and upon reconsideration.  R. 21-22.  Plaintiff requested a hearing, which was held on June 11, 2012, before Administrative Law Judge James P. Alderisio (hereinafter referred to as "ALJ").  R. 282-94.  In a decision dated[1] July 23, 2012, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision.  R. 10-20.  Plaintiff timely filed a Request for Review of the ALJ's decision which the Appeals Council denied on June 13, 2013.  R. 6-8, 277-79.  Plaintiff filed this action for judicial review on August 13, 2013.  Doc. 1.

### B.   Medical History and Findings Summary

Plaintiff was forty-three years old at the time of the ALJ's decision. R. 10, 61. She attended college and obtained a certificate of completion as an office specialist. R. 81.  Plaintiff worked as a senior pharmacy technician for 16 years, from 1993 to 2009.  R. 291.  She had first been diagnosed with carpal tunnel syndrome in 2005 based on objective testing, but her initially sporadic symptoms became persistent by April 2009, her alleged onset date.  R. 81, 182.

Plaintiff's medical history is set forth in detail in the ALJ's decision.  By way of summary, Plaintiff complained of carpal tunnel syndrome (with release on the right in 2009) and nerve damage in hands, constant pain in both hands and fingertips, arms, elbows, neck and shoulders; obesity, GERD, migraine headaches, and hypertension.  R. 21, 22, 87, 96, 104.  After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from bilateral carpal tunnel syndrome and obesity, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1,

---

[1] The date line on the signature page at the end of the ALJ's decision is undated (R. 20), but the date on the Notice of Decision and the Index lists the hearing decision as "dated 7/23/13" (R. 2); however, the "2013" appears to be a typographical error since it is after the Appeals Council decision dated June 13, 2013.  R. 6.

Subpart P, Regulations No. 4.  R. 15-16.  The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, except she could not drive, and could only occasionally perform overhead reaching with both upper extremities.  R. 16.  Based upon Plaintiff's RFC, the ALJ determined that she could not perform past relevant work.  R. 18.  Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a ticket taker, usher, and cashier.  R. 19-20.  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 20.

Plaintiff asserts several overlapping points of error. The Court addresses all issues grouped as described below, although theses are not in the order presented by Plaintiff.  First, she argues that the ALJ erred in assessing whether her impairments were severe, and in finding that she had the RFC to perform light work without discussing the opinions of her treating physicians.  Second, Plaintiff argues that the ALJ erred in failing to give great weight to the Workers Compensation determination that she was temporarily totally disabled.  Third, Plaintiff contends the ALJ erred by posing an incomplete hypothetical to the VE. Fourth, she argues that, when her RFC is properly assessed and her bilateral carpal tunnel syndrome limitations are considered, she lacks the manual dexterity to perform sedentary work, and the ALJ erred in not finding she was disabled and entitled to an immediate award. Fifth, she asserts that the ALJ erred by improperly applying the pain standard and in evaluating her credibility.  For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED.**

## II.      STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she

is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from

doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's

impairments (considering her residual functional capacity, age, education, and past work) prevent her

from doing other work that exists in the national economy, then she is disabled.  20 C.F.R.

§ 404.1520(f).

## III.    ISSUES AND ANALYSIS

### A.    Determining severe impairments

Plaintiff argues that  the ALJ erred in failing to find that her hypertension and diabetes were

"severe" impairments which would have more than a minimal effect on her ability to perform work.

The Commissioner argues the ALJ properly considered Plaintiff's impairments, giving them the

appropriate weight, and found in Plaintiff's favor at Step 2, which was sufficient to continue the

disability analysis to the next step.

At Step 2 of the five-step evaluation process, an ALJ is called upon to determine whether a

claimant's impairments are severe.  By definition, this inquiry is a "threshold" inquiry.  It allows only

claims based on the most trivial impairments to be rejected.  In this Circuit, an impairment is not

severe only if the abnormality is so slight and its effect so minimal that it would clearly not be

expected to interfere with the individual's ability to work, irrespective of age, education, or work

experience.  A claimant need show only that her impairment is not so slight and its effect not so

minimal.  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

Plaintiff argues that her conditions of hypertension, diabetes, and obesity in combination

would affect her ability to perform light work, but the ALJ did not address the combined effect of

these conditions, and instead mischaracterized the evidence from the consultative examiner, Dr.

Shefsky, who diagnosed Plaintiff with hypertension as well as obesity and bilateral carpal tunnel

syndrome.  Plaintiff argues that the ALJ erred by only mentioning hypertension in passing (at R. 16) and by completely omitting that Plaintiff was diabetic, as her treating physician at Johnnie Ruth Clarke (Dr. Villamagna) noted, which precluded her from prolonged standing and walking.  R. 253, 267, 273, 274. She argues that under Eleventh Circuit precedent, *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985), the ALJ is required to state with specificity all of the claimant's impairments, determine whether they are severe or not severe, and consider them in combination.  *See Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987).

The Commissioner argues the ALJ expressly noted that the record contains a hypertension diagnosis, but that Plaintiff reported few, if any, limitations resulting from the diagnosis. R. 16.  The Commissioner also argues that, while Plaintiff had diagnoses of hypertension and diabetes, a diagnosis alone does not explain Plaintiff's limitations on her ability to do work, and she did not allege disability due to hypertension or diabetes when she filed her claim or at the hearing.  Doc. 13 at 5 (citing R. 80, 282-91, 323).  The Commissioner contends that Plaintiff failed to prove her impairments–whether determined to be "severe" or not–caused greater limitations than those the ALJ included in the RFC finding.  The Commissioner also points out there was no error because the ALJ found in Plaintiff's favor at step two by finding she had severe impairments of CTS and obesity (R. 15), and then proceeded to consider her entire medical condition, including all of her impairments at the next step.

To obtain Social Security disability benefits, a claimant must show:  (1) he is not performing substantial gainful activity; (2) he has a severe impairment; (3) the impairment or combination of impairments meets or equals an impairment listed in the regulations; or (4) he cannot return to past work; and (5) he cannot perform other work based on his age, education, and experience. *Phillips v. Barnhard*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C. F.R. §§ 404. 1520 and 416.920.  The finding

of *any* severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe. *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902 (11th Cir. 2011).

In this case, the ALJ found that Plaintiff suffered from bilateral carpal tunnel syndrome and obesity, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  R. 15-16.  However, even assuming *arguendo* that the ALJ erred when he concluded Plaintiff's hypertension and diabetes were not severe impairments, such error would be harmless because the ALJ considered Plaintiff's impairments at later steps in the evaluation process. *See Burgin*, 420 F. App'x at 902.  As to whether the ALJ correctly determined the impact of Plaintiff's stated limitations from all of her impairments on her RFC, that issue is addressed below.

### B.      RFC and the treating physicians' opinions

Plaintiff argues that the ALJ erred  in failing to properly rely on the medical opinions of Plaintiff's treating orthopedist, orthopedic surgeon, and family physician (Drs. Cusumano, Rodriguez, and Villamagna), instead assigning weight only to the opinion of the state agency physician (R. 18), to whom the ALJ says he gave "little weight."  Plaintiff also contends the ALJ should not have found her able to perform light work without considering that her carpal tunnel syndrome would preclude repetitive use of her hands in any retraining or employment in other work.  *See* R. 262-64.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof.  *Id.*  Substantial weight must be given

to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). The opinions of specialists are generally given more weight on issues within the area of expertise than those of nonspecialists. *See, e.g., Baker v. Astrue*, 2011 WL 899311, *7 (M.D. Fla. Mar. 14, 2011); 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5).

The Commissioner argues that the ALJ properly considered the medical evidence and opinions in assessing Plaintiff's RFC, and substantial evidence supports the ALJ's RFC finding. Doc. 13. The Commissioner also argues that the ALJ is not required to base his assessment on a medical opinion of "disability" or the ALJ would in effect "confer upon the physician the authority to determine the RFC" and "would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." Doc. 13 at 8.

However, under fairly recent Eleventh Circuit case law, *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. Jan. 24, 2011), whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion which requires the ALJ to state

with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1986)).

Although the ALJ in this case cited some of the relevant evidence regarding Plaintiff's carpal tunnel syndrome and treatment, he did not give the complete picture of her "very severe compressed nerve" issues, and he mischaracterized the extent of Plaintiff's recovery, her ultimate condition, and her long-term limitations by focusing exclusively on her muscle strength and range of motion measures, and ignoring her *neurological* impairments which were determined with objective testing.

The ALJ described the medical evidence as follows:

Initial evaluation in June 2009 at All Florida Orthopedic Associates showed essentially normal clinical findings. However, the claimant did exhibit pain upon range of motion testing in the left wrist, right wrist, and neck. However, she retained full range of motion. In addition, the claimant had full muscle strength throughout, including the upper extremities. The claimant's sensation was intact, and she was negative for swelling, tenderness, or atrophy (Exhibit 3F).

Nevertheless, orthopedic records and electromyography (EMG) studies confirm a diagnosis of carpal tunnel syndrome. She underwent a right carpal tunnel release in August 2009, which provided "some relief." However, the surgery failed to completely eradicate the claimant's symptoms. She continued to report difficulty with fine manipulation when using the computer, as well as numbness and tingling. She was prescribed anti-inflammatory medications, *but nerve conduction studies in March 2010 confirmed nerve problems in both wrists, despite the right-sided surgery*. On physical examination, *the claimant complained of bilateral pain with motion of the wrists. However the claimant's overall muscle tone was normal, and she exhibited no focal motor deficits in the upper extremities. Subsequent examinations did reveal some mild giveaway weakness in the right upper extremity*. Additional surgery in August 2010 was scheduled for the left side (Exhibits 2F, 3F, 7F). However, the record contains insufficient evidence to establish that the claimant ever underwent this surgery.

R. 17 (emphasis added).

Plaintiff had been suffering from carpal tunnel syndrome with symptoms of numbness and swelling since at least 2005 based on objective testing, and the symptoms continued to come and go until April 2009 when Plaintiff complained of persistent tingling with numbness. R. 81, 182. Plaintiff

stopped working on June 19, 2009 when "it got to the point that she could not tolerate the pain in her wrist." R. 171. When she saw Dr. Cusumano at All Florida Orthopaedic on June 25, 209, as part of her Workers Compensation case, he noted she had bilateral hand numbness and tingling, and he ordered an electromyography ("EMG") of her upper extremities. R. 176-77. The nerve conduction study showed she was in the moderate to severe category for carpal tunnel syndrome. R. 170. Over the following month, Plaintiff was prescribed therapy, splinting, bracing and anti-inflammatories, but her symptoms did not improve; thus, the orthopedist prescribed "the last option" of surgery on both sides, starting with the right side, and he planned to keep her on temporary total disability "until after her surgeries" because both of them would have to be done before she could get back to work. R. 171 (July 31, 2009).

On August 31, 2009, Plaintiff had the surgery for a "very severely compressed" medial nerve involving her right wrist. R. 129. However, after the surgery, although Plaintiff was initially doing better, she still had numbness in her right hand. R. 166. Dr. Rodriguez's notes for September 15, 2009 report that she had continued numbness in her right hand both on the dorsal and volar aspects, and a shocking feeling in her hand in the palmar aspect which indicated that the nerve was quite restricted for some time prior to the surgery and it was beginning to wake up a little bit. R. 163. She was still not able to make a full fist, but was starting to move her hand a little bit more and was "doing well with physical therapy from that aspect. R. 163. She did have carpal tunnel syndrome on both wrists and was using her left hand more as a result of having had the surgery on the right side; therefore, her left wrist was starting to give her a little bit more trouble and she has not been using her brace on her left wrist as much during the day because of that. Her physical therapy was continued and her pain medication was changed because of some side effects. R. 163. About one month after surgery she was "a little better," but she still had some adhesions and she was "a little hypersensitive"

which was "not unusual" because "that typically happens in the beginning when the nerve starts to come back." R. 162. Dr. Rodriguez anticipated that Plaintiff's nerves were "hypersensitive and then the sensation hopefully will come back to normal. . . Hopefully she will continue to improve." R. 162.

By October 20, 2009, six weeks after surgery, Dr. Rodriguez noted "she was still not better." R. 159. She was still having difficulty and she was a "scar former" with "quite a few adhesions" – although they were less than the prior visit, they were still there. R. 159. He continued her therapy, hoping she would "get the sensation back with the nerve." R. 159. He noted that most people take between two and four months and her recovery was not even quite at two months yet; he hoped in a month that the "nerve will start to come back." R. 159. As he explained, "I do not heal the nerve. All we do is take the pressure off the nerve so the nerve has a potential to come back and hopefully for her it will." R. 159. On October 29, 2009, Dr. Cusumano examined Plaintiff who stated she had bilateral pain numbness, but her symptoms had "improved slightly"; he added a prescription for Lunesta because she was having difficulty sleeping secondary to the pain. R. 156.

About ten weeks after surgery, on November 17, 2009, Dr. Rodriguez opined that the "nerve was starting to come back" but it had not come back "all the way." R. 153. However, the other issue Plaintiff was dealing with was adhesions; she had scar tissue and it was stopping her from making a full fist. R. 153. He noted that "part of her work related duties are being able to use her hands extensively, to open and close things, and she is not there yet." R. 153. He recommended waiting to perform the release surgery on the left until they could get the right as good as possible because she would be relying on that right hand once he performed surgery on the left hand, and she had been relying more on the left hand because of the surgery on the right hand. R. 153. He decided to keep her on temporary total disability, and he hoped the sensation would return in the ensuing six weeks because it had started to return; however, the "bad news" was that "she is a scar former and is having

difficulty breaking through that scar tissue. I physically tested her today and there is no question that she has formed some adhesions down in the carpal canal region." R. 153.  Four to five months after surgery she still had numbness and tingling which would "come and go" or "every now and then"; however, when she attempted to work on her home computer doing similar things to those at her work,

her symptoms came back rather quickly and she could only last about 15 minutes; she also had triggering involving her left index finger.  R. 150.  Dr. Rodriguez told Plaintiff that if things did not really improve over the next month then he would have to consider retraining her for a different job or other job possibilities that "will not be so stressful on her hands."  R. 147.

After six month of recovery time, in February 2010, Dr. Rodriguez noted:

> [Plaintiff] just has not really turned the corner. She has not been back to work since July [2009] and her symptoms are starting to come back and over this last month they have gotten progressively worse which concerns me. Typically what happens they will be a little symptomatic and then it should get a little bit better, but not in her case. She has not really been stressed from her work. *I am going to go ahead and have them repeat the nerve conduction studies and see where she is. If those studies show no significant improvement with this then my recommendation would be that she needs to be retrained in some way for something that is obvious less stressful on her hands.* We will wait and see what the studies show. She will see Dr. Cusumano and repeat those studies and compare them to the ones that were done prior to surgery.

R. 143 (emphasis added).

Plaintiff's follow-up nerve conduction studies were performed on March 11, 2010 by Dr. Leavengood who – according to Dr. Rodriguez – had a "very good reputation" as a "very good nerve conduction study" specialist.  R. 142, 261.  Dr. Rodriguez described Dr. Leavengood's interpretation as follows:

[S]he still has problems with the nerve at both wrists with the right that was operated on and the left that has not been operated on. They do show evidence of axonal[2] [neuropathic] loss.

I went over this with her that surgery is an option for her left wrist, but again, *they do not always improve postoperatively and in her case she did not on the right.* I have to tell her that the same thing may happen on the left because of her nerve conduction studies. Only time will tell if doing the surgery is necessarily going to make her better. So on this she has the option to do her left hand at her convenience.

With this I do think that she would be a candidate eventually for some type of retraining. *She should not really be in a position or a job that does require a lot of repetitive use of her hands due to the fact that it is obviously going to put more and more stress on her hands*. I do think a retraining would be something in her benefit not that she cannot use her hands completely, but she just needs something with light use of her hands.

R. 142 (emphasis added).  Despite the undisputed fact that Plaintiff's right wrist and nerve did *not* improve post-operatively on the right, Plaintiff in April and August 2010 discussed with Dr. Rodriguez having surgery on her left-side carpal tunnel. R. 138, 141.  It appears that surgery was scheduled at some point (R. 139), but there are no records that it was actually performed, and Plaintiff testified that she opted not to have the surgery on the left-side because it was not successful on the right-side. R. 289.

The Commissioner does not dispute that the ALJ did not expressly state the weight he assigned to the opinions of Dr. Rodriguez and Dr. Cusumano, but argues it was a harmless error and that the ALJ properly accommodated any limitations in the RFC finding by finding that Plaintiff had a reduced capacity for fine manipulation.  Doc. 13 at 9-10.  The Commissioner relies on several pre-

---

[2]Most often used to describe the type of underlying nerve pathology responsible for generalized polyneuropathies. In this context, usually used incorrectly, i.e., "axonal polyneuropathy", rather than "axon loss poly-neuropathy" (to distinguish the disorder from a "demyelinating polyneuropathy").  Stedmans at 191.  "Axonal" means pertaining to an axon; the single process of a nerve cell that under normal conditions conducts nervous impulses away from the cell body and its remaining processes. Stedmans p. 191.

*Winschel* cases which are inapposite here where there are treating physician opinions on Plaintiff's limitations that were clearly omitted.

As Plaintiff points out, the ALJ failed to properly analyze or characterize her carpal tunnel syndrome and ineffective surgery (R. 262, 264) or the limitation in using her hands and wrists in a repetitive basis. Dr. Rodriguez opined in June 2009 that Plaintiff had "very limited to no use of bilateral hands" and she was "currently unable to work due to her condition." R. 262-63. In April 2010, Dr. Rodriguez opined: "She should not really be in a position or a job that does require a lot of repetitive use of her hands due to the fact that it is obviously going to put more and more stress on her hands. I do think a retraining would be something with light use of her hands." R. 264. Under *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011), the ALJ is required to state with particularity the weight given to the opinions of the treating physicians and particularly in the case, those of the orthopedist Dr. Cusumano, the orthopedic surgeon Dr. Rodriguez, and the neurologist Dr. Leavengood as well as the reasons the ALJ did not credit those opinions. The ALJ's opinion here is similarly deficient as in *Winschel*:

> In this case, the ALJ referenced Winschel's treating physician only once, and that reference merely noted that Winschel saw the doctor monthly. *The ALJ did not mention the treating physician's medical opinion, let alone give it "considerable weight."* Likewise, the ALJ did not discuss pertinent elements of the examining physician's medical opinion, and the ALJ's conclusions suggest that those elements were not considered. It is possible that the ALJ considered and rejected these two medical opinions, but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence. Accordingly, we reverse. On remand, the ALJ must explicitly consider and explain the weight accorded to the medical opinion evidence.

*Winschel*, 631 F.3d at 1179 (emphasis added).

In this case, the ALJ did not state the weight given to any of the statements of the doctors from All Florida Orthopedic Associates, even though the ALJ recognized Plaintiff's treatment by these orthopedic specialists. R. 17. Instead, the only medical opinion to which the ALJ specifically gave

some weight – although it was "little weight" – was that of the state agency reviewing physician that the ALJ found "support[ed] no additional limitations.  R. 18.

As orthopedic specialists, the opinions of Drs. Cusumano and Rodriguez are entitled to controlling weight as long as they are supported by medically acceptable clinical and laboratory diagnostic techniques, and are not inconsistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "Generally, treating physicians' opinions are given more weight than non-treating physicians; and the opinions of specialists are given more weight on issues within the area of expertise than those of nonspecialists." *Baker v. Astrue*, 2011 WL 899311, *7 (M.D. Fla. Mar. 14, 2011) (citing *McNamee v. Soc. Sec. Admin.*, 162 F. Appx. 919, 923 (11th Cir. Jan. 31, 2006) (unpublished); 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5) (the following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "Length of the treatment relationship and the frequency of examination"; (2) the "Nature and extent of treatment relationship"; (3) "Supportability"; (4) "Consistency" with other medical evidence in the record; and (5) "Specialization").

Here, not only did the ALJ failed to discuss these opinions that Plaintiff's right-side surgery had not cured her neurological "very severe compression" in the nerve, concentrating instead on Plaintiff's muscle strength and range of motion, the ALJ also failed to include a limitation in Plaintiff's RFC precluding repetitive use of her hands, or limiting her to "light" use of hands (other than a restriction on driving).  As such, the ALJ's decision was not based on substantial evidence.

Plaintiff also argues that the ALJ erred in omitting any discussion of the reports from Dr. Villamagna, the treating internist at Johnnie Ruth Clarke Center, also known as the Community Health Centers of Pinellas County (R. 266-76).  While it is true that Plaintiff was diagnosed with diabetes or "impaired fasting glucose" in November 2011, and prescribed Metformin (R. 268, 271),

it is not clear from the format of the records (as the Commissioner notes) who the treating healthcare professional was, and it might have been the Nurse Practitioner, Steven A. Riczu, ARNP. *See* R. 273, 276. The ALJ commented on records from the Community Health Center (R. 17), but in the context of Plaintiff's carpal tunnel syndrome continuing.   On remand, the ALJ will give these records of Plaintiff's treatment for diabetes the appropriate weight

### C. Workers Compensation Disability

Plaintiff argues that the ALJ erred in failing to address or weigh Plaintiff's workers compensation determination that qualified her as temporarily totally disabled ("TTD").  Plaintiff argues that she was not released to return to work by her doctor pursuant to the workers compensation determination, and the ALJ should have given great weight to the workers compensation determination due to similarities of Florida Worker's Compensation Law and Social Security Law, citing *Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984).  The Commissioner concedes that the ALJ did not expressly designate the weight afforded to the TTD opinions, but argues that "the omission was harmless error." Doc. 13 at 10.

Although the Social Security regulations provide that a decision by another agency that a claimant is disabled are not binding on the SSA, 20 C.F.R. §§ 404.1504, 416.904, the Eleventh Circuit has found that a finding of disability by another agency is entitled to "great weight." *See Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984) (Florida Division of Worker's Compensation disability finding); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983) (Florida Retirement Division disability finding); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. Unit A Mar.1981) (VA disability rating).  Social Security Ruling 06–3p also requires the ALJ to explain the consideration given to the disability decisions of other agencies. SSR 06–3p, 2006 WL 2263437, at *45596–97 (Aug. 9, 2006); *cf. Hughes v. Commissioner of Social Security*, 486 Fed.Appx. 11 (11th Cir. Aug. 2,

2012) (holding substantial evidence supported the ALJ's decision to give little weight to the State of Florida's disability determination where plaintiff submitted a single-page disability determination stating that plaintiff had been approved for "Regular Disability Retirement" but provided no explanation for the basis of that determination); *Davis-Grimplin v. Commissioner, Social Sec. Admin.* 2014 WL 702608, *4 (11th Cir. Feb. 25, 2014) (finding that the ALJ was justified in giving little weight to the State of Florida's disability determination because all that plaintiff introduced was a one-page, conclusory document acknowledging that she was receiving worker's compensation benefits).

The *Falcon* decision is directly on point and involved a similar determination by the Florida Division of Workers Compensation finding the plaintiff temporarily totally disabled from April 1979 up to at least November 1980.  732 F.2d at 831.  The Eleventh Circuit held that the ALJ had erred in not giving great weight to the Florida agency's finding of temporary total disability and on remand the ALJ would be required to accord the Workers Compensation finding its proper weight.  In this case, there were multiple Workers Compensation forms completed by Plaintiff's treating physicians (Drs. Cusumano and Rodriguez) which described her functional limitations and found her temporarily totally disabled.  *See, e.g.*, R. 221-32.  Yet, the ALJ failed to comment on the findings in these records, much less give great weight to these opinions.  Accordingly, the ALJ's decision was not based on substantial evidence.  On remand, the ALJ will explain the weight given to the Workers Compensation temporary total disability determination or explain why "great weight" was not given to the Workers Compensation determination.

**D.  Whether the ALJ's hypothetical to the VE included all of Plaintiff's impairments**

Plaintiff contends that the ALJ's finding that Plaintiff could perform light work, based on the vocational expert's testimony, was not supported by substantial evidence and Plaintiff should have

been found disabled.  The Commissioner contends that substantial evidence supports the ALJ's hypothetical question and the ALJ is not required to include findings in a hypothetical question to a VE that he finds unsupported by the evidence of record.

The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).  Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence.  *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

The ALJ proposed a hypothetical to the VE for an individual who could "work at the light level" but with occasional overhead reaching of both upper extremities, and no driving.  R. 291.  In response, the VE testified the hypothetical individual could perform other work as ticket-taker, usher, and cashier II.  R. 291-92.  The ALJ stated in his decision that "Social Security Ruling 83-10 notes that unskilled, light jobs require the use of hands to grasp, hold, and turn objects, but do not require the level of fine manipulation needed for sedentary jobs. Thus, a limitation to light exertional work accommodates an individual suffering from CTS that results in a reduced capacity for fine manipulation."  R. 18.

Plaintiff argues that the ALJ erred in finding she could perform the exertional requirements of light work, in that she could not do prolonged standing or walking for six out of eight hours given her obesity, hypertension, and diabetes.  R. 253.  Plaintiff points to Social Security regulations which define light work as requiring a frequent (one-third to two-thirds of the workday or up to six hours) walking or standing – the primary difference between sedentary and most light jobs – or in the case of sitting type jobs, as requiring pushing and pulling of arm/hand or leg controls, and the use of arms

and hands to grasp and to hold and turn objects, and frequent lifting or carrying up to 10 pounds, all of which requires greater exertion than in sedentary work.  SSR 83-10 at 6.  Plaintiff argues that even the state agency reviewing physician (whose opinion the ALJ accorded some weight) recognized that Plaintiff should "[a]void heavy lifting and prolonged walking and standing because it causes pain in her hands.  The reported symptoms are attributable to a MDI and are credible and consistent with the total MER."  R. 253.

She argues that there were inconsistencies the way her RFC was presented in the hypothetical to the VE, which did not include all of her impairments, primarily her carpal tunnel syndrome, and omitted her frozen elbows and the pain traveling up the arm to the shoulder, and the inability to grasp such things as a steering wheel.  She also contends that the ALJ failed to properly account for the very limited use of her hands (and no repetitive work) in performing light work In addition, because the ALJ limited Plaintiff in overhead reaching to less than 1/3 of the day, she argues that she would also be unable to pull arm or hand or leg/foot controls.  She argues in addition that with the limitation precluding her from driving (which the ALJ included) would also preclude her from "grasping," and could not perform light work on that basis.  She additionally contends that the "other work in the economy" found by the VE based on the improper hypothetical – ticket taker, usher, and cashier II – could not be performed without the repetitive use of hands.

In this case, Plaintiff testified that she could no longer work as a pharmacy technician because she could not grasp, hold, or turn the bottles.  R. 285.  She also testified to significant pain causing her to elevate her hands to avoid the discomfort.  R. 286.  As described in detail above, Dr. Rodriguez precluded Plaintiff from repetitive use of both hands and limited her to "light" use of hands.  R. 261-62.  The ALJ erred in failing to properly include all of Plaintiff's limitations in the hypothetical to the VE.  As such, the ALJ's decision was not based on substantial evidence.  Plaintiff argues that if she

is not capable of any light work, and is found able to do only sedentary work, then she should be found disabled because she cannot perform the fine manual dexterity work required in sedentary work.  On remand, if the ALJ finds Plaintiff limited to sedentary work, he will address this issue.

**E.  Pain and credibility.**

Plaintiff asserts that the ALJ erred in evaluating her pain and in finding her subjective complaints credible only concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC he assessed.  R. 17.  The Commissioner argues that the objective evidence of record does not support Plaintiff's complaints of disabling limitations.  Specifically, as the ALJ noted, Dr. Rodriguez stated that the open carpal tunnel release on the right wrist provided Plaintiff with "some relief" and he recommended "retraining" for Plaintiff in "something with light use of her hands," thus she could do other work. R. 264.

Pain is a non-exertional impairment.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

When an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

In this case, the ALJ found:

> At hearing, the claimant testified that she declined the surgery on her left wrist because the right-sided surgery was unsuccessful. While it is clear from the medical record that the claimant's symptoms were not entirely abated, her treating orthopedic physician did note "some relief' (Exhibit 3F). Therefore, her characterization of her surgery as unsuccessful is not entirely credible. R. 17.

> Due to the minimal medical evidence in the record, Dr. Robert Shefsky conducted a consultative examination in February 2011. He noted that the claimant required no assistance changing for the examination and that the claimant's hand and finger dexterity was intact and her grip strength was 5/5 bilaterally. However, he did report some reduced range of motion in the upper extremities, particularly the shoulders, elbows, and wrists. He diagnosed the claimant would [sic] bilateral carpal tunnel syndrome by history, as well as extreme obesity (Exhibit 4F).
> * * *
> Here, the claimant also reported pain traveling up to her shoulder. While there is only minimal evidence to support her allegation, the undersigned afforded her the benefit of the doubt. Therefore, the undersigned further reduced the residual functional capacity to allow for no more than occasional overhead reaching bilaterally.
> * * *
> In sum, the above residual functional capacity assessment is supported by the claimant's treatment history, which establishes her impairments and her history of right-sided surgical intervention. Despite some relief, the claimant's symptoms persist. Accordingly, a reduction to light work with additional limitations listed above is appropriate.

R. 17-18.

Plaintiff argues that it is undisputed she suffered from an objectively determined medical condition, carpal tunnel syndrome, and the ALJ's credibility determination was based on her declining further surgery on her left wrist and the ALJ's finding that Dr. Rodriguez states "some relief" was

obtained from such surgery.  As the Court addressed in detail above, the ALJ has mischaracterized Plaintiff's final outcome and persistent nerve damage, and understandable reluctance (to Dr. Rodriguez) that she not have the additional surgery on the left-side because there was no guaranty of a reduction in the nerve problems.  R. 141, 264.  Accordingly, the ALJ's reasons are not supported by substantial evidence, and the decision must be reversed and remanded.

### F.  Remand

Plaintiff contends that the remand of the decision should be for an immediate award of benefits, rather than for a new hearing.  Plaintiff argues that, because the treating physician opinions have not been refuted, they must be taken as true as a matter of law per *MacGregor v. Bowen*, 786 F.2d 1050, 1058 (11th Cir. 1986).  Doc. 10 at 5.  She also argues that her testimony has not been discredited or refuted and must be taken as true as a matter of law.  Doc. 10 at 10 (*citing Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).  The Commissioner argues that the "accept as true" argument is contrary to the Social Security Act, 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").

However, the failure to adequately evaluate all of the opinions of the treating providers or make a proper credibility determination no longer requires the Court to accept these opinions or statements as true.  *See Lawton v. Commissioner of Soc. Sec.*, 431 Fed. Appx. 830, 835, 2011 WL 2471475, at *4 (11th Cir. June 22, 2011).  In *Lawton*, 431 Fed. Appx. 830, the Eleventh Circuit held that when the ALJ fails to properly articulate a credibility determination, reversal for payment of benefits is not appropriate.  The court in *Lawton* rejected the "accept as true" doctrine set out in *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986), noting prior decisions that had remanded cases to the agency when there was a failure to provide an adequate credibility determination.  *See, e.g.,*

*Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984); *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir. 1982).  As the Eleventh Circuit noted:

> We recognize that in *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986), this Court concluded that the Commissioner must accept as true a treating physician's opinion if the Commissioner ignored or failed to properly refute it. Our earlier precedent, however, remanded cases in which the ALJ failed to adequately explain the weight given doctors' opinions. *See, e.g., Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir.1985); *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir.1982). To the extent *MacGregor* is inconsistent, under the prior panel precedent rule, we are bound by the holding of the first panel to address an issue of law, unless and until it is overruled by this Court sitting en banc or the Supreme Court. *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir.1986) (en banc). Thus, rather than accept the ignored treating doctor's opinion as true and remand for the award of benefits, we remand to the agency to determine in the first instance the proper weight to be afforded the treating doctor's opinion.

*Dempsey v. Commissioner of Social Sec.*, No. 11-11434, 2011 WL 6032952, *4 (11th Cir. Dec. 5, 2011) (as an unpublished opinion of the Eleventh Circuit, *Dempsey* constitutes persuasive, and not binding, authority. *See* 11th Cir. R. 36-2 and I.O.P. 6.  The Court finds that reversal and remand is the appropriate course of action.

## IV.    CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence.  Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Recommended** in Orlando, Florida on June 4, 2014.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy